## No. 2529

### Second Circuit

### BETTS, ET AL., v. ATTAWAY

(May 22, 1928.    Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—New Trial—Par. 3.**
An application for a new trial or to re-open a case, is addressed to the sound legal discretion of the trial court.  When that discretion has not been abused, an appellate court should not interfere.  In this case, defendant's failure to appear in court was due to wilful negligence.

Appeal from the Tenth Judicial District Court, Parish of Natchitoches.  Hon. John F. Stephens, Judge.

Action by Frank Betts and Son against J. F. Attaway.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Pugh and Boatner; J. N. Marcantel, of Shreveport, attorneys for plaintiffs, appellees.

James W. Jones, Jr, of Natchitoches, attorney for defendant, appellant.

ODOM, J.  This is an appeal from the ruling of the District Judge refusing to re-open the case after the same had been tried and judgment rendered in favor of the plaintiffs as prayed for.

The ground upon which defendant seeks to have the case re-opened is that he was not in court at the time the case was called for trial and had no notice of the setting of the case.

The facts, as disclosed by the record and the testimony taken on the trial of the motion to re-open, are as follows:

The suit was filed on February 10, 1925, and service on defendant was made February 26, 1925.  Answer was filed March 18th, on which date the case was fixed for trial for April 22nd.

On that date the case was called up, and counsel for plaintiffs announced that they were ready, whereupon James W. Jones, Jr., attorney for defendant, stated to the court that the defendant was not in court.

The court, at 11 o'clock a. m., stated to defendant's attorney that he would recess the court until 1:00 o'clock p. m. in order that he might secure the presence of defendant in court.

At 1:00 o'clock p. m. court reconvened, at which time neither defendant nor his counsel was in court.  The court waited until 1:40 p. m., and no appearance having

being made by defendant or counsel, the court proceeded with the case, heard plaintiff's testimony until 2:10 p. m., when the case was closed and judgment rendered for plaintiffs, up to which time no appearance was made by defendant or his counsel.

On April 24th defendant, through his attorney, filed a motion to re-open the case, on the alleged ground that he had not been notified of the setting of the case for trial for April 22nd, hence his failure to appear.

The motion to re-open was tried and testimony taken on May 6th. The testimony shows that defendant lives about seven or eight miles from Natchitoches, the parish seat, and that he left home at about 7:00 o'clock a. m. on May 22nd, the day the case was fixed for trial, and rode on horseback to Natchitoches and reached there not later then 10:00 o'clock a. m. He swore that he did not know the case was set for trial, but that he went in to see his attorney to find out when it would be set.

But the testimony convinced the District Judge and it convinces us that he did know it was set and that his failure to appear at the courthouse was deliberate.

When defendant reached Natchitoches on the morning of April 22nd he stopped at the store of Julius Aaron, Jr., on the outskirts of the town. Aaron testified—

"He came and asked me if he could hitch his horse to the rack, and I told him yes, and he said he had a case in court today and he wanted to see Judge Jones."

Aaron says Attaway then left his store but he did not know where he went.

S. J. Procell, who lives within two hundred yards of the defendant, testified that defendant had worked for him on April 21st and he wanted him to work on the 22nd, but defendant said—

"* * * he had to come to town, he had a case in town."

Procell further testified that on April 22nd Marion Weaver went to defendant's residence and in the presence of witness and members of defendant's family asked for defendant, and that Carl Attaway, defendant's son, told Weaver—

"He would find Mr. Attaway, he supposed, at the courthouse; he left there to go to the trial he had in town."

Under cross-examination by Attaway's attorney Procell was asked if Attaway did not tell him on April 21st merely that he had a case in town, and Procell said:

"He didn't say that; he said he had a case in town the next day; he said he had a case in town the next day."

When Attaway did not appear in court for trial of his case, on April 22nd, the trial judge, over the vigorous protest of counsel for plaintiff, at 11:00 o'clock a. m., postponed the case until 1:00 o'clock p. m., and at once, of his own motion, ordered an instanta subpoena issued for him and ordered the sheriff to serve it.

M. J. Weaver, a deputy sheriff, went immediately to Attaway's residence, seven miles away. Arriving at Attaway's residence, he asked for the defendant and was told by defendant's wife—

"He left early that morning at 7 o'clock coming to Natchitoches he had a case there."

After that, Weaver talked to defendant's son.

"I asked him did he know where his papa was; he said I ought to find him at the courthouse, he had a case."

Weaver was asked by Attaway's attorney if they, the boy and Attaway's wife, told him defendant was going to town on ac-

count of the case, and Weaver said—

"I told her I had a summons for him to come to town for the case, and she said that was what he left for."

Attaway reached Natchitoches not later than 10:00 a'clock a. m., but he did not go to the courthouse. He told Aaron that he had a case in court that day and wanted to see his attorney. He could not explain why he did not go to the courthouse to find him.

Defendant's attorney testified that he was "under the impression" that the court recessed until 2:00 o'clock. He met his client before that time but did not at once proceed with him to the courthouse, but says he left his client, telling him to wait and he would send for him when he wanted him. The attorney says he reached the courthouse at 2:00 o'clock and was told that the case had been tried and the court had adjourned.

His testimony that he went to the court house at 2:00 o'clock is disputed by Mr. Ford, a deputy sheriff, who said the attorney reached the courthouse at 2:40 o'clock by his time. This was forty to forty-five minutes after the attorney said he thought court would convene, and more than one hour after the attorney says he met his client on the street or at a store.

After meeting his client, he says he proceeded to the courthouse without him, notwithstanding he knew that court had recessed for the express purpose of getting defendant in court.

Counsel for defendant says he was "under the impression" that court recessed until 2:00 o'clock.

But the District Judge says, he told him from the bench that he would give him

two hours from 11:00 o'clock to get defendant there, and the deputy sheriff testified that at 11:00 o'clock he announced, in a loud voice, that court had recessed until 1:00 o'clock, and that the attorney was within ten feet of him when the announcement was made.

A deputy clerk testified that he heard that announcement and that any one in the courtroom could have heard it.

The District Judge dictated the following as his reasons for refusing to re-open the case:

"This case was, fixed for trial on the 22nd of April, and in the morning, after the completion of the roll call of attorneys and preliminary motions, the case was called for trial. The plaintiff announcing ready, the court notified counsel for defendant and inquired if counsel for defendant was ready, to which he replied he was not, and on inquiry as to why he was not ready, he promptly said his client was not in court. The court told him he would give him fifteen minutes to get in touch with his client, and inquired of him where Attaway, the defendant, lived; he replied that Mr. Attaway lived at Marthaville; and the clerk of the court was in the courtroom at the time and said that Mr. Attaway had moved from Marthaville and lived on the Scarborough & Carver place some distance out of the town of Natchitoches. I suggested to Judge Jones that he go down and see if he could get in touch with him, and in a few minutes he returned into court and said that he had put in a call for him at Powhattan. The court knew that he lived some distance from Powhattan and that a telephone call at that place would not be any benefit to him. The plaintiff and leading counsel for plaintiff being from Shreveport and were ready to try the case and insisted on a trial, the court said to Judge Jones that he would give him until 1:00 o'clock to get his client in court; that if he lived on the Scarborough & Carver place it was only six or seven miles out, and that there would be no trouble in get-

ting him in court at 1:00 o'clock. I told the sheriff to announce that court would take recess until 1:00 o'clock. The sheriff did announce that court would be at recess until 1:00 o'clock. I then asked Judge Jones, counsel for defendant, to see Scriven Swett, the clerk, who had volunteered the information that the defendant lived on the Scarborough & Carver place, and ask him what he knew about it; he reported that the defendant did live there and that he frequently saw him in town and knew that he did not live far from town, and I said there should be no trouble in getting your client by one o'clock. Judge Jones seemed to the court to be so indifferent about the matter that I went to Mr. Scarborough and inquired if he knew if he lived on his place, and he said he did, and on account of the indifference of Judge Jones about the matter and the insistence of the plaintiff's counsel for a trial, and the court suggested himself that a summons be issued for the defendant. I was in the sheriff's office some time about 12:00 o'clock, and Mr. Weaver, the deputy sheriff, left with the summons. In the meantime, not more than 45 minutes, he returned and reported he was informed by the wife of the defendant that he had left home about 7:00 o'clock that morning to attend a case in court. At the hour of 1:00 o'clock I came upstairs. The plaintiffs and their attorneys were present. Neither Judge Jones nor the defendant were in court. I instructed Mr. Ford to ring the bell, which he did, and in a few minutes counsel for plaintiffs insisted that they were a long way from home and they desired that the case be called. I said to them that I would wait until 1:30. I noticed the time particularly, it was 1:40, when—In the meantime I had requested the sheriff to go to Judge Jones' office and see if he could find him, and he reported he was not in his office. At 1:40 I notified counsel for plaintiffs that if they insisted, that they could proceed with the trial of the case. The pleadings were read, evidence was filed, and the court is sure 't was not earlier than 2:00 o'clock when the case was completed. The court then went down stairs and was in the clerk's office perhaps ten minutes, and then went out in town for a few minutes, and it could not have been earlier than 2:30 when the clerk and the court left the clerk's office, before Judge Jones or his client had put in any appearance; they had not at that time. If the court felt that there was the slightest chance of this defendant not knowing his case was fixed for trial that day I would be glad to re-open it and give him the opportunity to be heard; but the court is convinced beyond any shadow of doubt that this defendant did just what his people say he did, he left home that morning at 7:00 o'clock for the purpose of attending the trial. Why he did not attend it, is not necessary for the court to rule on. I am sure that he did not want to be present on that occasion; that he deliberately absented himself from the courthouse. I can't understand how his counsel could have been mistaken about when the court was to reconvene in the afternoon. I stated to him, specially addressing him from the bench, that I will give you two hours to get your client. This over the protest of counsel for plaintiffs. Being convinced that an effort has been made to trifle with the court, it seems to be dangerously near contempt of court. That there is no reason why this case should be re-opened. Defendant has had every opportunity. He has, in my judgment, deliberately failed to avail himself of the opportunity to be heard. The court does not feel like he is entitled to have the case re-opened. For that reason the motion to re-open the case is overruled."

An application for a new trial or to reopen a case, is addressed to the sound legal discretion of the trial court. When that discretion has not been abused, an appellate court should not interfere.

The trial judge in this case has not abused his discretion. On the contrary, we are convinced, as was the trial judge, that the defendant's failure to appear in court was due to wilful negligence.

See authorities cited in Volume V, Louisiana Digest, "New Trial," page 533.